## In re GUNN'S ESTATE.

### SAYER v. GUNN.

1. WILLS — CONSTRUCTION—HUSBAND AND WIFE—ANTE-NUPTIAL AGREEMENT— EFFECT.

   Testator agreed by ante-nuptial agreement that in consideration of his wife's release of all claim on his property, his executor, in case she survived him, should pay her $500 and interest at 7 per cent. from the date of the marriage. During his lifetime testator paid her $35 yearly, which he indorsed on the contract. His will gave her an equal share with his children less $500 and the interest thereon, "the same being the consideration named in a certain deed, etc." *Held,* that the yearly payments by the testator were not to be deducted from the widow's share.

2. APPEAL AND ERROR—QUESTIONS CONSIDERED—EVIDENCE.

   Whether it was error, in a case tried without a jury, to admit parol testimony from the scrivener who drew the will in question as to testator's intention in making a certain provision, will not be considered where a proper construction of the will and another instrument referred to by it requires affirmance of the judgment.

Error to Ionia; Davis, J.    Submitted October 17, 1906. (Docket No. 92.)    Decided December 17, 1906.

Jacob J. Sayer filed his final account as executor of the last will and testament of Theodore Gunn, deceased, which was allowed in the probate court and Agnes Gunn, a legatee, appealed to the circuit court.    There was judgment for contestant, and the executor brings error.    Affirmed.

R. A. Hawley. for appellant.

George E. Nichols, for appellee.

MOORE, J.    Theodore Gunn died May 14, 1902, leaving a last will which has been admitted to probate.    The appellant, Jacob J. Sayer, is the executor named in the will and appointed by the probate court.    The deceased left a widow, Agnes Gunn, him surviving, and David Gunn, Isabelle Sayer, George Gunn, Sarah Oatley, Isaac Gunn, Maggie Whorley, Emory Gunn, and Alice Gunn, his children.    Agnes Gunn was his second wife.    The children were the offspring of Mr. Gunn's first marriage. Prior to the marriage of Mr. and Mrs. Gunn, and on or about the 30th day of November, 1888, an ante-nuptial agreement was entered into by them, in which agreement is the following language:

"That in lieu and in full satisfaction of her whole dower in his estate and of all claims of any and every nature whatsoever upon his personalty, he hereby provides and agrees that there shall be paid to her by his executors or administrators out of his estate the sum of $500 with interest thereon at the rate of 7 per centum per annum from the date of such marriage, within 60 days after his death, should she survive him after such intended marriage."

Further provisions followed to carry out the release of dower, and then:

"And further, if the said marriage shall be had and she shall survive him, that she will not claim any share or interest in his personal estate, unless some part thereof be given to her by his will or some act done by him subsequent to the execution of these presents."

On the 15th day of June, 1898, Mr. Gunn made a will which contains the following provision:

"My will is: *First.* That all my just debts, including funeral expenses, and the expenses of administration, shall, by my executor hereinafter named, be paid out of my estate, as soon after my decease as shall by him be found convenient.

"*Second.* All the rest and residue of my estate, personal, real and mixed, of which I shall die seised and possessed, or to which I shall be entitled at my decease, I give, devise, bequeath to be equally divided between and among my wife, Agnes Gunn, and my children [naming them as above], or to the issue of any deceased child or children by right of representation, share and share alike; provided, however, that the share of my wife, Agnes Gunn, shall be less five hundred dollars and the interest paid her thereon, the same being the consideration named in a certain deed executed by her before marriage in lieu of dower in and to my real and personal estate."

Mr. Gunn paid $35 yearly to his wife, which payments were indorsed on the ante-nuptial agreement. After his death, and on July 10, 1902, the executor paid her the sum of $35. On July 13, 1902, he paid her the sum of $7.29, being the interest from April 29, 1902, to July 13, 1902. On November 12, 1902, he paid her the principal, $500, and the interest from July 13, 1902, to that date, $18.75. On the 9th day of April, 1903, the executor filed his final account, from which statement it appears that there remained for distribution among the legatees of Mr. Gunn the sum of $12,423.67. Upon this accounting the probate judge made an order distributing the estate as follows, to wit:

"To Agnes Gunn, David Gunn, Isabelle Sayer, George Gunn, Sarah Oatley, Isaac Gunn, Maggie Whorley, Emory Gunn and Alice Gunn, the whole of said estate, real and personal, share and share alike; provided, however, that the share of Agnes Gunn shall be less the sum of five hundred dollars and the interest paid her thereon up to and including sixty days from the date of death of said Theodore Gunn, deceased, the same being the consideration named in a certain deed executed by her before

marriage in lieu of dower in and to the personal estate of said deceased, which said sum so to be deducted from the proportionate share of said Agnes Gunn was $927.29, as shown by the statement attached at the time of the account of said executor."

Mrs. Gunn appealed from this order to the circuit court, where a trial was had before the court without a jury. On the trial the testimony of the scrivener who drew the will was taken, over the objection of the attorney for the appellee, as to the conversation he had with Mr. Gunn at the time the will was drawn. Counsel for the appellant say:

"And the objection to this testimony and the holding of the court overruling any such objection occasioned the only exception that was taken on said trial."

The court made findings of fact and law to which exceptions were duly taken. The circuit judge found a judgment in favor of Mrs. Gunn.

Counsel for appellant present the following questions in their brief:

"1. When, to what extent, and under what circumstances is parol evidence receivable as bearing upon the construction of a will?

"2. Was the parol evidence, admitted on the trial of this case, receivable upon any question arising in the suit?

"3. What is the proper meaning and construction of the language in this will, the meaning of which is controverted, and what was the real intention of the testator, as indicated by such language, properly construed?"

He insists the testimony of the scrivener should not have been taken, under the following rule:

"Parol evidence cannot be admitted to supply or contradict, enlarge or vary the words of a will, nor to explain the intention of the testator, except in two cases, viz.: (a) To explain a latent ambiguity arising dehors, or (b) to rebut a resulting trust"—citing Bradner on Evidence, p. 389; also section 9, p. 280, and many cases.

He further claims that the case does not come within

the exceptions, and that the judgment of the probate court is right, and the judgment of the circuit court is wrong. Counsel for the appellee do not question the rule of law, but insist that the will shows the necessity of referring to the ante-nuptial agreement for its proper construction, and that the testimony of the scrivener is competent.

A reference to the provisions of the will which we have quoted will show that, after providing for debts, funeral expenses, and expenses of administration, Mr. Gunn desired his wife to share equally with his children; that from her share should be deducted "five hundred dollars and the interest paid her thereon, the same being the consideration named in a certain deed executed by her before marriage in lieu of dower in and to my real and personal estate." It cannot be determined from the will itself to how much the interest amounted which was to be deducted. To find the amount it is necessary to refer to the ante-nuptial agreement. It is fair to infer from the will that the amount to be deducted was the amount which made up the consideration named in the ante-nuptial agreement. When we refer to that agreement, we find that Mr. Gunn provides:

"That in lieu and in full satisfaction of her whole dower in his estate and of all claims of any and every nature whatsoever upon his personalty, he hereby provides and agrees that there shall be paid to her by his executors or administrators out of his estate the sum of $500, with interest thereon at the rate of 7 per centum per annum from the date of such marriage within 60 days after his death, should she survive him after such intended marriage."

There is a further provision that because of the ante-nuptial agreement "she will not claim any share or interest in his personal estate, unless some part thereof be given to her by his will or some act done by him subsequent to the execution of these presents."

It will be observed that under these provisions Mrs. Gunn relinquished all claim she would have to Mr. Gunn's

property and estate, unless she survived him. She was not entitled by the law, in the absence of the agreement, to dower until his death, nor to his personal estate. The agreement was that, instead of her taking what the law would give her, she would take in lieu thereof $500 with interest thereon at 7 per cent. from the date of the marriage to be paid to her by the executor within 60 days after the death of Mr. Gunn. As a matter of fact, the executor never did pay this interest, but contented himself with paying one year's interest on July 10, 1902, $35, and the further sums of $26.04, and he charged her the payments which had been made to Mrs. Gunn by her husband. Had the executor paid to Mrs. Gunn according to the provisions of the ante-nuptial agreement, and deducted from her share the payments thus made, or had he deducted simply the amount he in fact paid, he would have reached the same result which the circuit judge reached, and it would not have been necessary to take parol testimony. When the two instruments are read together, it is clear this is all he was entitled to deduct. The scrivener testified Mr. Gunn desired the will drawn so his wife should share equally with his children in the property he left, and he (the scrivener) undertook to so draw the will; that Mr. Gunn did not have the ante-nuptial agreement with him at the time, and said the will was to take the place of it. As before stated, when the will and the ante-nuptial agreement are read together, and the provisions contained therein are carried out, it results in an equal division of the property, and it is unnecessary to determine whether the parol testimony was admissible.

Judgment is affirmed.

CARPENTER, C. J., and McALVAY, GRANT, and BLAIR, JJ., concurred.